**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 1:26-CV-23072-MFE**

**KATHLEEN McMANAMON**,

Plaintiff,
v.

**MIAMI POLICE DEPARTMENT, OFFICERS CARBALLO, PERALES, MERCED, ZARATE, MARTINEZ RAMOS**, *and* **BRADSHAW**,

Defendants,
_______________________________________/

## DEFENDANTS' MOTION TO DISMISS

Defendants Miami Police Department, Bradshaw, Carballo, Martinez Ramos, Merced, Perales, and Zarate file this Motion to Dismiss the Plaintiff's First Amended Complaint ("FAC") [ECF No. 9].[1] As set forth below, the Motion should be granted

## MEMORANDUM OF LAW IN SUPPORT

## THE COMPLAINT

Liberally construed, in Count I, the Plaintiff raises the following claims under the Fourth Amendment: (1) Defendants approached her vehicle without reasonable suspicion in violation of the Fourth Amendment, (2) Defendants used excessive force by approaching her vehicle with hands on their weapons, (3) Defendants improperly searched her person, a tobacco bag on her

---

[1] Defendant "Miami-Dade County / Miami-Dade County Police Department" has not yet been served. See generally Docket

person, and the vehicle in question, and (4) Defendants unlawfully arrested her because the officers allegedly lacked probable cause. FAC ¶¶ 22–24

In Count II, the Plaintiff argues Defendants violated her Fifth Amendment due process rights "by arresting and detaining her without probable cause and"—more broadly—"by failing to respect procedural protections. FAC ¶¶ 25–27.

As to Count III, the Plaintiff contends Defendants violated her Ninth Amendment "right to travel, rights to bodily integrity, privacy, and family association" FAC ¶¶ 28–29.

Plaintiff, in Count IV, advances a *Monell*-based claim against "Miami-Dade County / Miami-Dade Police Department" for "constitutional violations proximately caused by polices, practices, customs, training, or supervision, including failure to train officers on the limits of stops, searches, seizures, and arrests; failure to supervise; and failure to discipline officers for unlawful conduct." FAC ¶ 32. In what appears to be Plaintiff recognizing the conclusory nature of these allegations for the *Monell* claim, Plaintiff says she "will plead specific Monell facts following discovery." *Id.* (error in original).

**STANDARD OF REVIEW**

A complaint must be brought via a "short and plain statement," demonstrating that the claimant is entitled to relief. Fed R. Civ. P. 8. To do so, a complaint must contain "enough facts" that "plausibl[y]" support a legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual content is accepted as true under this standard; *however*, legal conclusions, conclusions couched as factual content, threadbare recitals of elements, unwarranted deductions, and vague/conclusory statements receive no presumption of truth. *See Ashcroft v. Iqbal,* 556 U.S. 662, 677–79 (2009); *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007); *Womack v. Carroll Cty.*, Ga., 840 F. App'x 404, 405 (11th Cir. 2020); *Dhillon v. Zions First Nat. Bank*, 462

F. App'x 880, 883 (11th Cir. 2012). Plausibility is met if the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678.

## ANALYSIS

### I. The Miami Police Department is Not a Proper Party.

The claims against the Miami Police Department are legally baseless. *See generally* FAC. The capacity to sue or be sued is "determined by the law of the state in which the district court sits." Fed. R. Civ. P. 17(b). "Police departments are not usually considered legal entities subject to suit[.]" *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 945 (11th Cir. 2008) (cleaned up). Florida law, consistent with that general rule, does not confer police departments with the power to sue or be sued. *See Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995). Thus, for the purposes of any federal or state law claims, the Miami Police Department is not a proper party and should be dismissed. *See Lomax v. City of Miami Police Dep't*, No. 09-CV-20830, 2010 WL 2163497, at *3 (S.D. Fla. Apr. 20, 2010) (recommending the dismissal of federal claims against the Miami Police Department for lack of capacity to be sued), *report and recommendation adopted*, No. 09-20830-CIV, 2010 WL 2163525 (S.D. Fla. May 27, 2010); *Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995) (dismissing state law claims against a police department). Lastly, because the Plaintiff sued and purported to effectuate service on the Miami Police Department, which is not a legal entity capable of being sued, the Plaintiff's failure to identify a proper party authorizes a dismissal of all claims purportedly against the Miami Police Department.

### II. No Claims Against Miami Police Department

Based on the FAC, it appears Miami Police Department was served in error because the only count against a municipality or an entity at all is Count IV, which is against Miami-Dade

County and Miami-Dade County Police Department. FAC ¶ 9 (identifying "Miami-Dade County / Miami-Dade Police Department" as a defendant), ¶¶31–32 (showing claim against "Miami-Dade County / Miami-Dade Police Department"). Since that is a separate legal entity, there are no cognizable or plausible claims advanced against Miami Police Department. Thus, for this additional reason, it should be dismissed for failure to state a claim because there is no plausible claim against Miami Police Department.

## III. Officers had Probable Cause to Stop/Detain, Arrest, and Search (Count I)

Plaintiff's claims fail as a matter of law because the Plaintiff's allegations effectively concede to criminal liability that a reasonable officer would have grounds to detain for further investigation, probable cause to arrest after conducting the traffic stop, and a lawful basis to conduct a search of the Plaintiff and her vehicle as part of a search incident to an arrest. The Defendants address the Plaintiff's theories in turn.

### A. Unreasonable Detention – Reasonable Suspicion

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). For a traffic stop to be lawful, an officer must satisfy the reasonable suspicion standard via a particularized and objective basis for suspecting criminal activity. *Navarette v. California*, 572 U.S. 393, 396–97 (2014).

Taking the Plaintiff at her word, the officers observed Plaintiff operating a motor vehicle with a license plate from the "Amnesty Coalition" and purports to be immune from the laws of Florida—even when she is within its territorial boundaries—because she is allegedly not a citizen

of Florida or the U.S. *See* FAC ¶ 14. Because the Plaintiff makes reference to the Amnesty Coalition, judicial notice should be taken of the following website, describing the Amnesty Coalition and its mission: https://www.theamnestycoalition.org/questions-and-answers.[2] On a separate page, the Amnesty Coalition purports to distribute automobile plates for those that agree to "both the Code of a Pickletarian and the Covenant of an Ambassador" provided such persons, among other things, "surrendered" their driver's license and have read "The Guide to the Most Beautiful Woman in the World: the United States of America" and "the Treatise of the Word 'Person[,]'" as explained in the following link for which judicial notice should be taken as well: https://www.theamnestycoalition.org/plates-and-passports.[3] On that page, towards the middle to the bottom of the page, it depicts examples of an "Amnesty Coalition" license plate, purporting to allow anyone who affixes it to their vehicle to present themselves as an ambassador to this unrecognized coalition. For whatever reason, on that same page, it shows the license plates are "not currently available" if ever they were distributed by the Amnesty Coalition.

[2] Federal Rule of Evidence 201 allows the Court to take judicial notice of records that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting Fed. R. Evid. 201(b)). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Id.* "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [the] district court." *Dippin' Dots, Inc. v. Frosty Bites Distrib.*, LLC, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)). Here, the Plaintiff has an opportunity to object why the Court should not take judicial notice of the Amnesty Coalition's website where it appears that entity distributes or distributed license plates for the purposes of background information and confirmation that the license plate is not issued by a recognized legal entity capable of distributing license plates in the State of Florida or the United States. Thus, procedural safeguards are protected and honored here.

[3] *See* supra note 2.

Under Section 322.34(2)(a), Florida Statutes, a person who has a driver's license that has been cancelled, suspended, or revoked or who otherwise "does not have a driver license or driving privilege" because of a suspension or revocation and knows of such cancellation, suspension, revocation, or other equivalent status when driving a motor vehicle commits a misdemeanor in the second degree for a first offense. Fla. Stat. § 322.34(2)(a). Thus, upon observing a license that does not belong to a State of the United States America or otherwise indicates lawful issuance of driver's privileges, the officers had probable cause—and, at the very least, reasonable suspicion–to believe the Plaintiff violated Section 322.34(2)(a), Florida Statutes. *See United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (holding officers had reasonable suspicion to stop a traffic vehicle and, therefore, complied with the Fourth Amendment because a rapidly blinking turn signal created reasonable suspicion of a traffic violation).

According to the Plaintiff, though, she told officers that she "surrendered her license in 2024" on March 6, 2026. FAC ¶¶ 12, 14. Setting aside the Plaintiff confessed that she knew that she had no driver's license or associated privileges, the Plaintiff's averment that she told officers that she drove without a license in 2026 since she surrendered her license in 2024 means the Plaintiff confessed to operating motor vehicle with no valid driver's license or privileges despite not having one for more than 6 months, in violation of Section 322.03(6), Florida Statutes. *See* Fla. Stat. § 322.03(6). As such, the Plaintiff also gave the officers probable cause—and, at the very least, reasonable suspicion—under that statute upon learning the Plaintiff operated a vehicle while not having one for more than 6 months. *See. Campbell*, 26 F.4th at 880 (holding officers had reasonable suspicion to stop a traffic vehicle and, therefore, complied with the Fourth Amendment because a rapidly blinking turn signal created reasonable suspicion of a traffic violation).

Because the Plaintiff committed multiple traffic offenses, and the basis to stop was the fraudulent or legally meaningless license plate, the officers possessed reasonable suspicion for the stop. Thus, any unreasonable detention claim arising under the Fourth Amendment against any Defendant should be dismissed. Regardless, the Plaintiff does not identify which officer or officers detained her with specificity, so the claim also fails for lack of plausibility. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Phillips v. City of Miami*, No. 25-21192-CIV, 2026 WL 205514, at *3 (S.D. Fla. Jan. 16, 2026) (Singhal, J.) (dismissing claims against defendants whose conduct was not specifically identified within the pleading).

**B. Unreasonable Seizure/Arrest – Probable Cause**

"It is by now hornbook law that "the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Scott v. City of Miami*, 139 F.4th 1267, 1273 (11th Cir. 2025) (cleaned up). "Probable cause is not a high bar." *Id.* (cleaned up). "[B]ecause probable cause requires less than a preponderance of the evidence, it necessarily follows that probable cause does not require that it be more likely than not the person arrested for a crime is actually guilty of it." *Davis v. City of Apopka*, 78 F.4th 1326, 1334 (11th Cir. 2023). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

Importantly, probable cause is "judged not with clinical detachment but with a common sense view to the realities of normal life." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990) (internal citation omitted).

Here, the officers had probable cause to arrest the Plaintiff for violations of Sections 322.03(6) and 322.34(2)(a), Florida Statutes. As stated earlier, the Plaintiff drove without a driver's privileges or a license, utilized an invalid plate, and admitted in 2026 that she knew of not having a license by stating she surrendered her license in 2024. Thus, since the Plaintiff drove knowingly without a valid license for more than six months, probable cause existed for Section 322.34(2)(a). Florida Statutes. Likewise, because the Plaintiff did not have a driver's license or valid plate, and she conceded not having a license since 2024, the Plaintiff's FAC concedes to a violation of Section 322.03(6), Florida Statutes.

As a result, because the officers would have had probable cause to arrest the Plaintiff based on the information they observed and heard, the false arrest claims (or "Unreasonable Seizure" claims for the Plaintiff's arrest) against all defendants fails as a matter of law. *See Scott v. City of Miami*, 139 F.4th 1267, 1279 (11th Cir. 2025) (demonstrating that a finding of probable cause ends any false arrest claim). In any event, because the Plaintiff does not identify which officer arrested him, the false arrest claims also fail for failure to satisfy the plausibility standard. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Phillips v. City of Miami*, No. 25-21192-CIV, 2026 WL 205514, at *3 (S.D. Fla. Jan. 16, 2026) (Singhal, J.) (dismissing claims against defendants whose conduct was not specifically identified within the pleading).

**C. Unreasonable Search – Probable Cause and Search Incident to Arrest**

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). Such searches are reasonable not only because of the need to disarm the arrestee of any weapons that might be used to resist arrest or effect his escape, but also because of the need "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.* at 226 (cleaned up). "Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification." *See United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir.2002).

As explained earlier, the Plaintiff's detention and arrest are constitutionally permissible based on her own allegations. As such, officers had authority to search the Plaintiff's person consistent with the right to make a search incident to arrest. *Id.*; *see also Robinson*, 414 U.S. at 224 (stating the finding of probable cause authorizes a search incident to arrest).

Further, because officers had probable cause to arrest the Plaintiff and to search the Plaintiff's person, officers would have had the authority to search the "tobacco pouch." This is because the Plaintiff said it was in her hands when officers removed them. FAC ¶ 17. Because officers may search an arrestee's person and effects incident to a lawful arrest, the search of the tobacco pouch was lawful too. *See United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) ("The wallet and papers belonging to the defendants here were actually found on their persons during a valid search incident to an arrest. Such searches may properly extend to personal property such as a wallet found on the person of the arrestee.").

For similar reasons, under the search incident to arrest exception, officers had the right to search the vehicle because it was occupied by the arrestee. *See New York v. Belton*, 453 U.S. 454,

460 (1981). Under that exception, officers may search a vehicle that the arrestee has recently occupied even if the officer first makes contact with the arrestee after they have exited the vehicle in question. *See Thornton v. United States*, 541 U.S. 615, 617 (2004). On top of this, the officers would have had another warrantless search exception, specifically the automobile exception wherein officers may search any container within an operational car without a warrant as long as probable cause to believe any container holds evidence of a crime or of the crime in question. *See United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005). In short, the search of the vehicle was lawful.

Turning next to the phone, the Plaintiff has no standing to suggest there was an unreasonable search of her phone. She acknowledges that she declined to provide her password or otherwise consent to searching her phone. FAC ¶ 17. As such, there was no search of her phone to warrant a Fourth Amendment claim.

Lastly, as to all theories of a search, the Plaintiff does not satisfy the plausibility standard because she does not identify which Defendant supposedly conducted an unlawful search within the FAC. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Phillips*, 2026 WL 205514, at *3 (dismissing claims against defendants whose conduct was not specifically identified within the pleading).

**D. Excessive Force - A Case of No Force**

When deciding whether a police officer used excessive force under the Fourth Amendment, courts consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting or attempting to evade arrest by flight. *See Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013). Here, the Plaintiff

supplies no allegations that officers applied force. Therefore, the conclusory invocation of excessive force fails to state a plausible claim for relief because there is no force to weigh against other factors, meaning it cannot be plausibly shown that any defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. Further, because there is no specific content as to what each individual Defendant supposedly did to be sued for excessive force, the FAC also fails on plausibility grounds for this reason. *See Phillips*, 2026 WL 205514, at *3.

**IV. The Fifth Amendment Due Process Claim (Count II)**

The Plaintiff relies on the Fifth Amendment's Due Process Clause for Count III. *See generally* FAC. This claim is futile because the Fifth Amendment's Due Process Clause applies only to the federal government. *See Williams v. Birmingham Water Works & Sewer Bd.*, No. 2:23-CV-1416-GMB, 2024 WL 5256495, at *3 (N.D. Ala. Nov. 14, 2024) (collecting cases). Further, the Plaintiff supplies no factual content for why a reasonable inference could be made that the Fifth Amendment Due Process Clause was violated, rendering the claim insufficient under plausibility standards too. *See Iqbal*, 556 U.S. at 678; *Phillips*, 2026 WL 205514, at *3.

**V. The Ninth Amendment Unenumerated Rights Claim (Count III)**

The Plaintiff brings a Ninth Amendment claim, contending her "right to travel, rights to bodily integrity, privacy, and family association" were violated among other unspecified rights by her use of the phrase "including." FAC ¶ 29. The FAC has no factual content as to who or how this is so; therefore, the pleading fails to state a claim. *See Iqbal*, 556 U.S. at 678; *Phillips*, 2026 WL 205514, at *3. In this regard, the Plaintiff's Ninth Amendment claim is nothing more than a conclusory invocation of legal doctrines, which certainly does not satisfy the *Twombly*/*Iqbal* standard. More importantly, the Ninth Amendment "is not an independent source of constitutional rights that may be asserted in a civil rights action." *Spano v. Satz*, 2011 WL 1303147, at *7 (S.D.

Fla. Mar. 31, 2011). Claims under § 1983 "must be premised on the violation of a right guaranteed by the U.S. Constitution or federal law," and the Ninth Amendment does not guarantee any rights. *Id.* Count III should, therefore, be dismissed for failure to state a claim.

## VI. Officers are Entitled to Qualified Immunity

Unlike other defenses, "[q]ualified immunity provides an *immunity from suit* rather than a mere defense to liability; and is effectively lost if a case is erroneously permitted to go to trial." *Fleming v. United States*, 127 F.4th 837, 853 (11th Cir. 2025) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (alterations omitted)). This is why an order denying qualified immunity is afforded "immediate appealability." *Mitchell*, 472 U.S. at 526. Put another way, if an erroneous pretrial denial of qualified immunity persists without appellate correction, the governmental employee's right to an interlocutory appeal and to free from suit "would be lost were the appeal to be delayed until after trial." *Fleming*, 127 F.4th at 853.

To apply the qualified immunity standard, an official must first show they acted within their discretionary authority; at which point, the plaintiff bears a shifted burden of proving that the law established the contours of the right so clearly that every reasonable official would have known his acts were unlawful beyond doubt. *See Zorn v. Linton*, 607 U.S. ____, 146 S. Ct. 926, 930 (2026).

The Supreme Court has explained that "clearly established law" for qualified immunity "should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). The assessment of whether the law was clearly established at the time of the alleged violation "must be undertaken in light of the specific context of the case" and particular to the facts of the case. *Mullenix v. Luna*, 577 U.S. 7 (2015) (quoting

*Brosseau v. Haugen*, 543 U.S. 194 (2004); *White*, 580 U.S. at 79 (citing *Anderson v. Creighton*, 483 U.S. 635 (1987).

In *District of Columbia v. Wesby*, the U.S. Supreme Court explained "[w]e have stressed that the 'specificity' of the rule is 'especially important in the Fourth Amendment context.'" 583 U.S. 48 (2018) (citing *Mullenix*, 577 U.S. at 11-12.)). "Probable cause 'turn[s] on the assessment of probabilities in particular factual contexts' and cannot be 'reduced to a neat set of legal rules.'" *Wesby*, 583 U.S. at 48.

Given the "imprecise nature" of probable cause, "officers will often find it difficult to know how the general standard of probable cause applies in 'the precise situation encountered.'" *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. 120 (2017)). For this reason, the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *Wesby*, 583 U.S. at 48 (quoting *White*, 580 U.S. at 79)). Although there need not be "'a case directly on point,' existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741)).

To summarize, "a right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Zorn v. Linton*, 607 U.S. ____, 146 S. Ct. 926, 930 (2026) (cleaned up). "[C]ourts generally need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution." *Id.* (citing *Escondido v. Emmons*, 586 U.S. 38, 43 (2019)) (cleaned up). "Principles stated generally, such as that an officer may not use unreasonable and excessive force' do not suffice [under this standard]." *Id.* (cleaned up). Instead, an officer must be able to have "read the relevant precedent beforehand and known that it proscribed their specific conduct." *Id.* (cleaned up).

If this articulation of the rule seems to demand a high degree of specificity, and it does, this is because the U.S. Supreme Court says that is how courts should apply this standard. *See Zorn*, 607 U.S. ___ , 146 S. Ct. at 930. In an excessive force context, for example, the U.S. Supreme Court reversed the Second Circuit's erroneous conclusion that a plaintiff satisfied the clearly established law standard in an excessive force case involving "a rear wristlock to move a noncompliant protester after repeated warnings." *Id.* at 931. To reach its erroneous conclusion on qualified immunity, the Second Circuit relied on its prior decision in *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004). However, as the U.S. Supreme Court pointed out in its opinion reversing the Second Circuit, *Amnesty America* concerned excessive force in the context of a rear wristlock to move a *compliant* protestor, leaving unresolved (or, at least, not obviously beyond debate) whether such maneuvers may be utilized on *noncompliant* individuals. *See id.* at 930–31 (discussing *Amnesty America*, 361 F.3d at 124). As such, if a plaintiff's cited-to case never holds that the specific conduct at issue violates the Constitution before the at-issue conduct occurred, qualified immunity is due. *See id.* at 931 (stating *Amnesty America* never held whether wristlocks on noncompliant protestors violates the Fourth Amendment); *Wesby*, 583 U.S. at 63–64 (explaining the rule cannot be merely "suggested by then-existing precedent" because every reasonable official must be able to understand that precedent and know that their conduct clearly violates the Constitution).

### A. Discretionary Authority

The Officers can easily meet their burden here. This is because the Plaintiff avers that officers stopped her vehicle, detained her, arrested her, and searched her, a tobacco bag she was holding, and her vehicle. *See generally* FAC. Again, there was no actual search of the cell phone mentioned in the FAC or of force applied. Regardless, the Plaintiff's allegations of a stop,

detention, arrest, and force would satisfy the individual officers' initial burden. *See Nigro v. Carrasquillo*, 152 F. Supp. 3d 1364, 1368 (S.D. Fla. 2015) ("Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers."). Thus, the burden now shifts to the Plaintiff to show clearly established law should have put a reasonable official on notice. *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), *modified on other grounds by*, 14 F.3d 583 (11th Cir. 1994).

**B. Clearly Established Law**

The Plaintiff is unable to meet her shifted burden of showing clearly established law. The Defendants provide the following recap. First, the central allegations are premised on the plaintiff driving around with a diplomatic plate from an entity apparently distributing legally meaningless plates. SMF ¶ 14. Second, the Plaintiff states she did not possess a U.S. state driver's license because she is a non-resident of Florida or any of the other States of the Union and could not have a U.S. license. SMF ¶ 14. Third, when approached by officers in 2026, the Plaintiff stated that she surrendered her license in 2024. SMF ¶ 14.

***i. Unreasonable Detention (Part of Count I)***

Turning first to the detention-based claims, to defeat the officers' entitlement to qualified immunity the Plaintiff must identify clearly established law confirming that every reasonable officer would have known that detaining the Plaintiff and her vehicle via a traffic stop was unlawful. To do so, she would have to show all reasonable officers would lack arguable reasonable suspicion when seeing the Amnesty Coalition plate on the roadways. *See Meshal v. Comm'r, Georgia Dep't of Pub. Safety*, 117 F.4th 1273, 1287–88 (11th Cir. 2024) (explaining the relevant inquiry is whether arguable reasonable suspicion exists under the plaintiff's version of events on

the motion-to-dismiss stage). The Plaintiff cannot find a case that does this, so qualified immunity as to any detention-based claim should be granted.

***ii. Unreasonable Seizure / False Arrest (Part of Count I)***

As for the false arrest claims, the Plaintiff still cannot defeat qualified immunity. There was probable cause for the arrest for the reasons stated earlier. As a result, there is no clearly established law that could save this claim. Nor could the Plaintiff show that all reasonable officials would lack arguable probable cause with clearly established law. *See Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (explaining that arguable probable cause to be entitled to qualified immunity exists if a reasonable officer in the same circumstance and possessing the same knowledge as the officer could have believed that probable cause existed to effectuate an arrest); *Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry [for false arrest claims]."). Thus, because there is probable cause and, at least, arguable probable cause that the Plaintiff cannot defeat with clearly established law, all false arrest claims are due to be dismissed too. *See Zorn*, 146 S. Ct. at 930 (explaining a failure to identify clearly established law entitles the defendant to qualified immunity).

***iii. Unreasonable Search (Part of Count I)***

Turning to the search claims, they fare no better. For the reasons previously stated, a lawful basis to search the Plaintiff, her person, the effects she had on her person, and her vehicle existed. However, even if the Court disagrees, the Plaintiff must identify clearly established law to show the search was unlawful and that every reasonable official would have known that to be the case with a specific case. Because she cannot do this, qualified immunity as to the search-based claims should issue too. *See Zorn*, 146 S. Ct. at 930.

***iv. Excessive Force (Part of Count I)***

As for the excessive force component of Count I, qualified immunity is also due. This is because the FAC has no factual content to support the existence of a constitutional violation for excessive force—much less, a clearly established one. Accordingly, qualified immunity should be granted once the Plaintiff fails to meet her burden. *See Zorn*, 146 S. Ct. at 930.

***v. Due Process and Unenumerated Rights (Counts II and III, Respectively)***

As stated earlier, the Fifth Amendment's Due Process Clause and the Unenumerated Rights Clause of the Ninth Amendment do not create an independent cause of action cognizable under Section 1983 against a state actor because the Fifth Amendment's Due Process Clause applies to the federal government and the Unenumerated Rights Clause confers no causes of action. Thus, the Plaintiff cannot show clearly established law was violated such that every reasonable official in the officers' position would know their conduct, as alleged, violates those laws. Thus, qualified immunity should issue as to Counts II and III. *See Zorn*, 146 S. Ct. at 930.

**VII. Shotgun Pleading**

Alternatively, and at a minimum, the FAC should be dismissed with an opportunity to amend because the Plaintiff violated the shotgun pleading doctrine. The Eleventh Circuit has identified four general categories of shotgun pleadings, which are impermissible pleadings. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) ("Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings."). "The most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second kind of shotgun pleading "is guilty of the venial sin of being replete with

conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23. Lastly, "there is the relatively rare [shotgun pleading] asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

The Plaintiff violated three of these rough categories and one unenumerated category. The most obvious violation is the Plaintiff's attempts at bringing multiple counts against multiple defendants without disclosing which claims are intended to be brought against them or what conduct such individuals committed. The Plaintiff has, therefore, violated the fourth kind of shotgun sin—those where multiple claims are brought against multiple defendants without specifying which of the claims are brought against them and why. To illustrate, none of the claims identify the specific party or parties sought to be liable under that count. The only claim indicating the Plaintiff intends to sue a municipal entity appears in Count IV because it says it seeks to bring the claim against Miami-Dade County / Miami-Dade County Police Department. In other words, while the heading of the FAC would indicate that she intends to bring suit against Miami Police Department, there are no claims expressly brought against Miami Police Department or the individual officers identified because the claims are either brought against "the Defendants" or Miami-Dade County / Miami-Dade Police Department. In short, because there are multiple claims

and multiple defendants without their specific conduct articulated or the claims identified against them specifically, the Plaintiff's FAC violates the shotgun doctrine.

The Plaintiff also violated the most common form of shotgun pleading—i.e.,, a pleading that rolls one count into the next by incorporation. Count II adopts paragraphs 1 through 24 of the FAC. In so doing, the Plaintiff folded the factual allegations and legal contentions of Count I, a cluster of Fourth Amendment claims, into her Fifth Amendment claims in Count II. Likewise, Count III adopts the allegations and contentions appearing in paragraphs 1 through 27, meaning the Plaintiff's Ninth Amendment claim in Count III has embedded Fourth and Fifth Amendment claims. Count IV is no different because it incorporates paragraphs 1 through 30, resulting in the Municipal Liability claim under *Monell* against Miami-Dade County and Miami-Dade Police Department to have embedded Fourth, Fifth, and Ninth Amendment claims. In short, because the Plaintiff's legal counts are rolled into subsequent counts, the FAC violates the first category of shotgun pleading.

The Plaintiff also violated the third kind of shotgun category due to her impermissibly jumbling his claims together in one count. In Count I, the Plaintiff has, at least, four distinct claims under the Fourth Amendment for theories of an Unreasonable Search, Unreasonable Detention, Unreasonable Arrest, and Excessive Force. Count III similarly jumbles together various claims, as Count III purports to assert that multiple (unspecified) Defendants violated her right to travel, bodily integrity, privacy, and family association. Because numerous claims are jumbled into two counts, this provides another basis to dismiss the FAC as a shotgun pleading.

Viewed together, the Plaintiff has committed three shotgun sins. Therefore, the Court should dismiss the FAC and require an amended pleading that corrects the deficiencies identified herein.

Respectfully submitted,

GEORGE K. WYSONG, III, City Attorney
BRYAN E. CAPDEVILA,
Assistant City Attorney
***Attorneys for City of Miami***
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130-1910
Tel.: (305) 416-1800
Fax: (305) 400-5071
Email: BCapdevila@miamigov.com
Secondary Email: SMFernandez@miamigov.com

By: */s/Bryan E. Capdevila*
Bryan E. Capdevila,
Assistant City Attorney

**[THIS SPACE LEFT INTENTIONALLY BLANK]**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 15th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *<u>/s/Bryan E. Capdevila</u>*
Bryan E. Capdevila,
Assistant City Attorney